IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGELINA PENA-ALCANTARA

Plaintiff

vs                                                    CIVIL 07-1651CCC

CORRECTIONAL HEALTH SERVICES, CORP.
COMMONWEALTH OF PUERTO RICO DEPARTMENT OF CORRECTIONS AND REHABILITATION

Defendants

## OPINION AND ORDER

The action before us, filed pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §2000e et. seq., arises from alleged discrimination based on national origin. Plaintiff Angelina Peña-Alcántara (Peña), a native of the Dominican Republic, alleges that she was the victim of harassment, retaliation and termination of her employment by her employers, defendants Correctional Health Services Corp. (CHSC) and the Commonwealth of Puerto Rico–Administration of Corrections (AOC).  She also brings supplemental claims under Puerto Rico statutes:  Law 100 29 L.P.R.A. §146; Law 115, 29 L.P.R.A. §194(a) and Articles 1802 and 1803 or the Civil Code of Puerto Rico, 31 L.P.R.A. §§5141 and 5142.

Now before the Court is defendants' Joint Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Incorporated Memorandum of Law filed August 14, 2008 **(docket entry 32),** which plaintiff opposed (**docket entry 42).**[1]

The pertinent facts, as alleged by the plaintiff in her complaint and elaborated in her opposition, are as follows:

Peña was employed by CHSC and AOC (¶7) as a Nurse II from October 16, 2002 until December 31, 2006 when she avers that she was illegally terminated (¶8).  She alleges

---

[1]Plaintiff's response to defendant's statement of uncontested facts, statement of additional facts and certified translations were filed separately (docket entries 45, 46 and 47 respectively.)

CIVIL 07-1651CCC                              2

that she suffered continuous harassment and derogatory comments due to her national origin.  Plaintiff contends that she complained to her superiors, who failed to take any prompt and effective remedial action.  After filing a complaint about the discrimination with the Puerto Rico Labor Department's Anti-Discrimination Unit, she states that the harassment intensified, she was transferred and subjected to disciplinary measures and finally discharged (¶9).  Peña also avers that she was treated in a discriminatory fashion in comparison to nurses of different national origins (¶10). She claims that as a result of the discrimination and discharge, she has suffered and will continue to suffer physical, mental and emotional damages (¶14).

Defendants raise the following grounds for granting summary judgment:

1.  Peña's claims against the Commonwealth under Articles 1802 and 1803 of the Civil Code of Puerto Rico are barred by the Eleventh Amendment of the United States Constitution.

2.  Plaintiff failed to properly state claims against defendants under Title VII.

3.  She has failed to state claims under Puerto Rico Laws 100 and 115.

4.  Plaintiff is not entitled to punitive damages under 42 U.S.C. §1981a(b)(1).


**Summary Judgment Standard**

Summary Judgment "is proper if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law."  Rule 56 of the Federal Rules of Civil Procedure; Eileen McCarthy v. Northwest, 56 F.3d 313, (1st Cir. 1995).  The nonmoving party must establish the existence of at least one factual issue that is both genuine and material to defeat a properly supported motion.  Brennan v. Hendrigan, 888 F.2d 129, (1st Cir. 1989). The role of a Motion for Summary Judgment is to "pierce the boilerplate of the pleadings and

CIVIL 07-1651CCC                                3

assay the parties proof in order to determine whether trial is actually required." Wynne v. Tufts University, 976 F.2d 791,794 (1st Cir. 1999).

Although a Court analyzing a summary judgment motion must look at the record in the light most favorable to the non-moving party, the Court may not rely merely on unsubstantiated allegations. Rather, the non-moving party may only overcome a summary judgment motion upon presentation of proof sufficient to raise a genuine issue of material fact. See, Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988); Cruz v. Crowley Towing, 807 F.2d 1084 (1st Cir. 1986). Said another way, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion [...]." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

[A] genuine issue of material fact exists if:  (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8thCir.1995).

**Eleventh Amendment Immunity**

We initially note that plaintiff, at paragraph 3 of her complaint, invokes our supplementary jurisdiction to entertain claims only as to CHSC, a private corporate entity. Therefore, no Eleventh Amendment conflict exists inasmuch as the claims under Laws 100 and 115 and Articles 1802 and 1803 of the Civil Code of Puerto Rico are not brought against the Commonwealth of Puerto Rico or AOC.

**CHSC as an Employer Title VII Purposes**

Peña also recognizes that the governmental defendants cannot be sued for punitive damages.  The issue of punitive damages as to CHSC is linked to whether this entity is an

CIVIL 07-1651CCC                                    4

"employer" within the meaning of Title VII, and, if so, whether CHSC engaged in discriminatory practice with malice or reckless indifference to plaintiff's protected rights.

Peña denies defendant's uncontested fact that she was an employee of only AOC. At page 2 of her response to defendants' statement, she argues that "[w]hether plaintiff was or not an employee of CHSC is a legal question to be resolved by resorting to the criteria developed by the case law to establish whether or not a joint- employer relationship exists.

Until July 1, 2005, the program providing medical and mental health care to the population of Puerto Rico's correctional institutions, the Correctional Health Program (CHP), was part of Puerto Rico's Department of Health (Defendants' Statement of Uncontested Facts(DF) 5)).[5]  On that date, the CHP, including its employees and equipment were transferred to Corrections (Id.)  On August 22, 2005, Corrections and CHSC entered into a management agreement by virtue of which the latter would manage CHP (DF7).  CHSC is a private, non-profit corporation organized and authorized to do business pursuant to the laws of Puerto Rico (Defendants's Ex 3,p.3; p.6, at 1.7).

Article 9 of the defendants' Comprehensive Management Agreement (Agreement) for the CHP, (Ex. 3) which deals with Human Resources, provides, in pertinent part:

> 9.1 In the performance of its obligations hereunder, CHSC, will use the services of the CHP's regular and transitory employees and contractors, collectively referred henceforth as "Government Employees and Contractors", . . .  Notwithstanding the fact that the employees will work at   AOC's facilities under the supervision and/or direction of CHSC, Government Employees and Contractors will continue to be considered employees or contractors of AOC until such time the employer-employee relation is terminated or modified for whatever reason.
>
> 9. 2 CHSC may, at its sole discretion, hire personnel to work directly for it....

———————————————

[5]Exhibits referenced in the uncontested cited facts have been used to flesh out our summary.

CIVIL 07-1651CCC                          5

> 9.3 Notwithstanding the above, CHSC will not hire current Government Employees and Contractors to work as CHSC employees unless CHSC first obtains AOC's] prior consent....

It is uncontroverted that plaintiff was a government employee at the time CHSC took over management of the CHP. Therefore, pursuant to the terms of the Agreement, she remained a government employee.

For purposes of Title VII, 42 U.S.C. §2000e(b) defines the term "employer" as: "a person engaged in an industry affecting commerce . . . and <u>any agent of such a person</u>...."

The court looks to common law agency principles to determine whether Title VII "employer" status exists. In order to qualify as an employer (or joint employer) for Title VII purposes, an entity must exercise significant control over the terms and conditions of an individual's employment. <u>Medina v. Adecco</u>, 561 F. Supp. 2d 162, 176-77 (D. Puerto Rico 2008). A 'joint employer" relationship exists when two entities share control of the employee to such an extent that they both function as an employer, even though they are operationally distinct. <u>Santiago v. Lloyd</u>, 33 F. Supp. 2d 99,103 (D. Puerto Rico 1998).

The concept of the "joint employer" was described in more detail in <u>Rivas v. Federación de Asociaciones Pecuarias de Puerto Rico</u>, 929 F.2d 814, 820 fn17 (1st Cir. 1991):

> The basis of the finding is simply that one employer while contracting good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus, the "joint employer" concept recognizes that the business entities involved are in fact separate but that they share or co-determine those conditions of employment.

(Citations omitted.)

Whether an entity possesses sufficient indicia of control to be an employer is essentially a factual issue. <u>Holyoke Visiting Nurses Association v. National Labor Relations Board</u>, 11 F.3d. 302, 306 (1st Cir. 1993). Acknowledging that it had not set forth a specific

CIVIL 07-1651CCC                                    6

test to use in evaluating where a joint relationship exists, the Court noted that other courts

had emphasized a number of relevant considerations, and went on to list factors such as:

the supervision of the employees' day-to-day activities, authority to hire or fire employees,

promulgation of work rules and conditions of employment, work assignments, issuance of

operating instructions, the right to refuse a referred employee, inspect and approve work,

pass on changes in pay and overtime allowed and discipline. Id. Rivas, supra, in its

discussion of the relevant considerations emphasized by the various courts of appeals,

identifies another factor–participation in the collective bargaining process.

       In evaluating the issue of "joint employers" in the case now before us, other

dispositions of Article 9 of the Agreement provide insight into the level of control exercised

by CHSC over the government employees such as Pena:

> 9.4 Subject to the terms of this Agreement, CHSC retains the right to put in place any managerial and/or supervisory structure it deems necessary to supervise, oversee, direct and manage the Government Employees and Contractors.  AOC will not establish or keep in place a parallel administrative, supervisory and/or managerial structure relating to the provision of health services and will rely on CHSC's administrative, managerial and /or supervisory structure for the provision of health services to inmates.
>
> 9.5 . . . CHSC will exercise full supervisory authority over the Government Employees and Contractors, . . . including supervising, overseeing, directing all Government Employees and Contractors and recommending hiring, terminating, promoting, demoting, disciplining and/or transferring said Employees. In any action requiring AOC's decision as the Nominating Authority, . . . CHSC will submit to AOC a recommendation detailing, at a minimum, (a) the name or names of the Government Employees and Contractors affected; (b) the action recommended; (c) an explanation for the recommended action, including supporting evidence and legal grounds; and (d) any other information or documentation that may be pertinent . . . any such recommendation will not be unreasonably denied by AOC....
>
> 9.6 CHSC reserves the right to request to AOC the relocation, transfer or termination of any Government or CHSC Employee that is not needed to serve the best interest of the health care system....

CIVIL 07-1651CCC                               7

The additional factor mentioned in <u>Rivas</u>, <u>supra</u>,–participation in the collective bargaining process–is also included in Article 9 the Agreement:  "9.10 CHSC will render all assistance possible to AOC in the evaluation and negotiation of any future collective bargaining agreements or modifications to the existing agreements;" and "9.11 All grievances filed by unionized Government Employees and Contractors will be handled by AOC, and CHSC will render all assistance necessary in the handling of all these grievances."

As is evident from these terms of the Agreement, CHSC exercised sufficient  control over the government employees to constitute a joint employer for purposes of Title VII.

**The Title VII Claim**

Plaintiff has recited an extensive history of national origin discrimination in the form of harassment and derogatory remarks by her supervisor Ana González, due to her being from the Dominican Republic.  Peña's claim is essentially one of a hostile work environment in which she was afraid to complain about González' treatment for fear she would be fired.  When matters finally came to a head during an incident in which Peña met with the Nursing Director Marilyn Torres and González to complain about the latter's harassment, Peña states that Torres told her : "Remember that I can fire you, you are not in Santo Domingo." (Docket entry 46, Ex.15, p.56.)

The record reflects that plaintiff worked for the AOC for over four years under a series of transitory contracts.  When the last contract was due to expire at the end of December, 2006, the Nursing Services Director recommended that Peña's contract be renewed for only three months (<u>Id</u>.,Ex.5) because plaintiff was on medical leave through the State Insurance Fund (SIF).  Notwithstanding the recommendation, AOC did not renew her contract.  While defendants state that Peña's contract was not renewed because she was reported to the SIF, plaintiff states that it was done in retaliation for her having previously filed her charge

CIVIL 07-1651CCC                          8

with the Anti-Discrimination Unit of the Puerto Rico Department of Labor and Human
Resources.

While transitory employees generally have no legitimate expectation to a renewal of
their contracts, Nieves-Villanueva v. Soto Rivera, 133 F.3d. 93, 94 (1st Cir 1997), they are,
nonetheless, protected from discriminatory motivated non-renewals. See, e.g. Figueroa v.
Aponte-Roque, 864 F.2d 947, 951(1st Cir. 1989).  Similarly, failure to renew a temporary
contract because plaintiff exercised her protected right to file a discrimination charge, see,
e.g. Clark v. Vernon, 2005 WL 2977778 (E.D.Ark, 2005) would constitute retaliation under
42 U.S.C. §2000e-3.

The reason for the non-renewal of Peña-jAlcántara's contract, that she was reported
to the SIF or that it was an act of retaliation,  is a genuine issue of material fact for which
summary judgment cannot be granted.


**CHSC's Liability under Laws 100 and 115**

Puerto Rico's Law 100, which protects employees from discrimination on the basis
of national origin and Law 115, which prohibits employers from retaliation against employees
who engage in protected activities, are statutes parallel to the federal Title VII.  Sánchez
Ramos v. Puerto Rico Police Dept., 392 F. Supp. 2d 167, 179 (D. Puerto Rico 2005).  See,
also, Medina, 561 F.Supp.2d, at 174.  CHSC, a private entity against which these claims are
brought, is subject to suit as a joint employer Peña.


**Claims under Articles 1802 and 1803 of the Civil Code of Puerto Rico**

Plaintiff's complaint identifies the statutes on which she anchors her claims, but does
not separate the discrete claims.  Therefore, it is impossible to assign any specific facts to
her claims under Puerto Rico tort law. Other than the allegations relating the events of

CIVIL 07-1651CCC                              9

discrimination based on her national origin and retaliation for having filed her charge with the

ADU, Peña relates no facts of a separate tort action.

The Supreme Court of Puerto Rico has addressed the interplay of causes of action

brought under specific employment statutes and Article 1802:

> The many and varied special labor laws in Puerto Rico seek to
> provide a special protection to the workers' interests. When
> seen as a whole they particularly reflect a basic public policy
> that provides the worker with efficient guarantees that favor their
> interests.   This legislation seeks to surpass the general
> safeguards and common protection offered to these workers by
> ordinary civil and penal statutes.  Therefore, they are a source
> of higher-ranking rights that supplant, insofar as they are
> concerned, those derived from ordinary legislation.

Rosario v. McConnel Valdés, 2008 WL 509204 *2 (D. Puerto Rico 2008) citing Santini

Rivera v. Serv. Air, Inc., 137 D.P.R. 1, 5 n.3 (1994).

"As a general rule, in the face of conduct by an employer that has been typified and

penalized by special labor legislation, the employee only has recourse to the relief of said

Act, and is barred from seeking additional compensation under article 1802 of the Civil Code

of Puerto Rico." Id.  Accordingly, under the facts as alleged in the complaint, Peña lacks a

cause of action under Articles 1802 and 1803.

For the above-stated reasons, defendants' Joint Motion for Summary Judgment

Pursuant to Fed. R. Civ. P. 56, **(docket entry 32 )** is GRANTED in part and DENIED in

part.  The motion is GRANTED as to the claims under Articles 1802 and 1803, which are

DISMISSED, with prejudice. It is DENIED as to the claims under Title VII and the

supplemental claims under  Puerto Rico Laws 100 and 115 against Correctional Health

Services, Corp.

Accordingly, the following claims remain:

1. The Title VII claims for national origin discrimination and retaliation against both

defendants.

CIVIL 07-1651CCC                              10

    2. The Laws 100 and 115 claims against Correctional Health Services, Corp.

SO ORDERED.

At San Juan, Puerto Rico, on March 20, 2009.


                                 S/CARMEN CONSUELO CEREZO
                                 United States District Judge